ELLIOTT R. BASSETT & OTHERS *vs.* ROBERT B. BRADLEY.

Where one purchases real estate encumbered by a mortgage, and agrees to pay the mortgage debt as a part of the consideration, the promise may be enforced by the mortgagee. In such a case the purchaser merely agrees to pay his own debt to a third person, who by an equitable subrogation stands in the place of the promisee. The action may also be sustained on the principle which governs assumpsit for money had and received.

The mortgagee may also sustain an action whenever the circumstances are such as to justify the conclusion that the promise was made for his benefit.

Where, however, the conveyance in which the promise is inserted is itself a mortgage, the case is different. Here the grantee owes no debt which he can promise to pay to the prior mortgagee, and such a promise is ordinarily a mere agreement to purchase the prior mortgage. It is simply a transaction between the immediate parties.

In such a case, after the last mortgage has been satisfied and discharged, it is clear that the promise has been cancelled and cannot be enforced by any one.

Bassett *v.* Bradley.

This would be presumed to be the intention of the parties, where nothing to the contrary appears.

*It seems,* however, that where the promise was made in part for the benefit of third parties, who have given a valuable consideration for it, their rights can not be affected by the discharge of the mortgage.

But while the last mortgage remains unsatisfied and in force, the mortgagee remains liable to the mortgagor on his promise, and the prior mortgagee may acquire and enforce his rights.

The defendant having a claim against *M,* it was agreed that the latter should give him a mortgage of a piece of land with a factory on it, which was part of a tract already encumbered by three mortgages, that *M* should procure from the third mortgagee a release of the factory lot, and that the defendant should assume the two prior mortgages, leaving the third mortgage the first on the remaining part. The third mortgagee released to *M,* who then made the mortgage agreed to the defendant, the deed containing a clause by which the defendant assumed and agreed to pay the two prior mortgages. The factory was afterwards burned without insurance, and the value of the whole tract became so reduced as to be sufficient only to pay the first mortgage. *M* thereupon assigned to an assignee of the second mortgagee his rights under the defendant's promise, who brought ⸺ upon it against the defendant to recover the amount of the second mortgage. Immediately after this the defendant tendered to *M* a reconveyance of the property, but *M* refused to receive it and the defendant put it upon record. At this time the mortgage to the defendant was not satisfied, but the debt had been reduced from $2,000 to $ 400. Held,—

1. That the defendant could not, at his own will, discharge the mortgage to himself and so relieve himself of his liability upon his promise.

2. That to allow him to do it would be a fraud upon the third mortgagee.

3 That the case was not affected by the fact that the mortgage was by an absolute deed, with a separate defeasance, by which the grantee agreed to reconvey, upon the written request of the mortgagor, on the mortgage debt being paid at any time within three years.

4. That the plaintiff was entitled to recover.

The plaintiff, being about to purchase the second mortgage debt, enquired of the defendant with regard to his liability to pay it, and the latter, with full knowledge that the enquiry was made with reference to a purchase of the debt, replied that "he had assumed and agreed to pay the debt, as his deed would show." Held that he was equitably estopped from denying his liability upon the promise.

ASSUMPSIT; brought to the Superior Court in New Haven County. The action was brought upon the assumption by a grantee, in a mortgage deed, of two prior mortgages and a promise to pay the mortgage debts. There were several counts in the declaration, the first and third setting forth the interest of the plaintiffs as owners of the second of the two prior mortgages, and an assignment to them of the

rights of the mortgagor under the promise of the defendant, the second stating the same general facts and alleging that the promise was made for the benefit of the prior mortgagees, and the fourth count being general for money had and received. The case was tried to the court before *Beardsley, J.,* who made the following finding of facts:

On the 10th of October, 1876, Solomon Mead was the owner of a tract of land in the city of New Haven, on a portion of which, one hundred feet front and two hundred feet deep, stood a shop four stories in height and a foundry. These buildings were fitted with boiler, engine, shafting, furnaces, and other machinery, and were in use by Mead as a plow manufactory. There were no buildings or improvements on the other portion of the land, and this lot, with its buildings and machinery, was by far the most valuable portion of the property.

At the date aforesaid the whole tract was subject to three mortgages, to wit: a first mortgage to the New Haven Savings Bank, dated July 14th, 1869, to secure a note of $2,500, of which $100 had been paid; a second mortgage to Anson Perkins, dated March 18th, 1874, to secure a note of $3,000, none of which had been paid; and a third mortgage to Cyrus Northrop, dated October 21st, 1875, to secure a note of two thousand dollars, $1,000 of which had then been paid, leaving $1,000 due.

The defendant, Robert B. Bradley, doing business under the name of R. B. Bradley & Co., was, and for a long time had been, a dealer in agricultural implements in New Haven, and among other things had bought plows from Mead for sale in his business, and had had other business dealings with him from time to time.

On said 10th day of October Mead was indebted to Bradley in the sum of $1,970.25, on account of certain notes, and the renewals thereof, which Bradley had theretofore endorsed, and been obliged to pay, for the accommodation of Mead. This indebtedness Bradley desired to secure or collect, and Mead desired to pay or secure the same, and for this purpose they agreed by parol that if Mead would procure

the release of the factory lot with the buildings from the Northrop mortgage, and would convey the same to Bradley by warranty deed, he, Bradley, would assume and pay the savings bank and the Perkins mortgages, and leave the Northrop mortgage the first on the other portions of the land. Mead, in view of this agreement, and for the purpose of carrying it out, did procure from Northrop, without other consideration to Northrop than the proposed benefit here stated,. a release of the factory lot and buildings, and thereupon executed and delivered to Bradley a warranty deed of the same, dated October 10th, 1876, which deed contained the following clause :

" The premises above described, with other adjacent land belonging to me, are subject to two mortgages, namely, one mortgage to the New Haven Savings Bank for twenty-five hundred dollars, of the principal of which mortgage one hundred dollars has been paid, leaving twenty-four hundred dollars only of principal due thereon, and one mortgage to Anson Perkins for three thousand dollars, both of which said mortgages, together amounting to fifty-four hundred dollars, the said Bradley assumes and agrees to pay as part of the consideration of this deed."

Mead and Bradley for the same purpose also agreed that Mead should give to Bradley a bill of sale of all the movable property, tools, stock, manufactured goods, &c., upon or. connected with the lot conveyed to him and with the plow manufactory thereon, and that Bradley should lease the factory, machinery and tools to Mead in order that he might continue to carry on his business therein, and in pursuance of this agreement a lease and bill of sale were executed. There was also, at the same time, executed and delivered to Mead by Bradley a writing which, after setting forth the fact of the conveyance of the factory lot by Mead to him, and the bill of sale of the machinery, tools and stock, and the indebtedness of Mead to him, proceeded as follows :

" Now, therefore, in consideration of the premises and of one dollar received to my full satisfaction of the said Solomon Mead, and in further consideration that said Mead shall

well and faithfully perform the conditions hereinafter mentioned, I hereby agree at any time on or before the expiration of three years from the date of this instrument, upon the written request of the said Mead, to reconvey to him, by a good and sufficient warranty deed, containing all the usual covenants, said land and buildings on the south side of Derby avenue heretofore conveyed to me by said Mead as aforesaid, subject to the same incumbrances (or to incumbrances of equal amount) as are in said deed from said Mead to me enumerated; and at the same time to execute and deliver to said Mead a good and sufficient bill of sale of all the tools, machinery and stock of every name and nature at that time on or about said premises; but provided and on condition that the two notes hereinbefore mentioned and endorsed by said R. B. Bradley & Co., as aforesaid, and any and all renewals of the same, in whole or in part, not to exceed the sum of $1,970.25 (which is the amount of the two notes so endorsed by said R. B. Bradley & Co.) shall be first paid in full by said Mead, and said firm of R. B. Bradley & Co. be forever saved harmless from all loss, cost, expenses and damage on account of endorsing said two notes above described and any and all renewals of the same in whole or in part; and upon the further condition that said Solomon Mead shall first reimburse me in full for all moneys paid by me on account of taxes or liens upon said land and buildings, or on account of interest upon the mortgages now upon said land and buildings. In witness whereof," &c.

This writing was never recorded; the warranty deed of Mead to Bradley and the lease of Bradley to Mead were both duly recorded.

Mead remained in possession of the factory lot and buildings, and carried on business there as before, but under the lease, until June, 1878, and during that period turned the manufactured goods, or the proceeds thereof, over to Bradley in payment of the debt secured by the mortgage, and another debt due from him to Bradley. After June, 1878, much of the movable property described in the bill of sale

was sold and the proceeds applied on the debt, which was thereby reduced, on the 23d day of October, 1878, to about the sum of $400. On that day the buildings with their contents were destroyed by fire, and were uninsured.

On the 28th of April, 1877, while Mead was occupying the factory under the lease, and while Bradley held the title to the factory lot, the plaintiffs became the owners of the Perkins note and mortgage of $3,000, in the manner and under the circumstances following: By the decease of Anson Perkins and the settlement of his estate, the note and mortgage had become the property of Alma Perkins and Elizabeth Andrews, the latter the daughter of said Alma and the wife of one James Andrews. James Andrews was indebted to the plaintiffs in the sum of $2,800, which debt was amply secured by a first mortgage. When this debt became payable, Andrews called upon the plaintiffs and offered to pay it by procuring the transfer to them of the Perkins note and mortgage upon the payment to him by them of the difference ($200) in money. At the same time Andrews stated to the plaintiffs that the property mortgaged to secure the Perkins note had been purchased by Bradley, and that Bradley had assumed and agreed to pay the note, and he asked the plaintiffs to enquire into the matter for themselves. Accordingly, on the 28th of April, 1877, Elliott R. Bassett, one of the plaintiffs and acting for all of them, went with Andrews to the store of Bradley, where the following conversation took place : Bassett told Bradley that he was negotiating for the Perkins note and mortgage, and had understood that he, Bradley, had bought the property, and then asked him if this was so. Bradley said it was so. Bassett then asked him to give his own note instead of the Perkins note. Bradley said he did not know that it would be any better for him, Bassett, as he had assumed and agreed to pay the Perkins note, as his deed would show. Bassett then asked Bradley how he considered the security. Bradley said it showed what he considered the property worth when he had paid on it or it had cost him some $1,800 more than the mortgages. This conversation was reported to the

other plaintiffs by Bassett, and relying mainly upon the lia-
bility of Bradley to pay the Perkins note, the plaintiffs
accepted the same in payment of the debt due to them from
Andrews, and paid Andrews the difference ($200) in money.
There was no evidence to show that Bradley was aware of
any of the dealings between Andrews and the plaintiffs
except as they were communicated to him in the foregoing
conversation.

The plaintiffs, from and after the 28th of April, 1877,
remained and still remain the owners of the Perkins note
and mortgage, and have never received payment of the note
or of any part of it; and the property subject to the mort-
gage has not since the fire been worth more than the savings
bank mortgage debt, or afforded any security to the Perkins
note.

On the 25th day of October, 1878, immediately after the
destruction of the buildings by fire, Bradley was informed
that a demand was about to be made upon him by the plain-
tiffs for the payment of the Perkins note, and he thereupon
procured a quitclaim deed of the factory lot from himself
to Mead to be prepared, and on the 29th of October executed
it and offered to deliver it to Mead.   Mead refused to receive
it, and reminded Bradley that other parties had rights which
forbade his accepting it.   Bradley then put the deed on rec-
ord, and left it in the town clerk's office, where it has since
remained, Mead never having accepted it.

In December, 1878, the plaintiffs made a direct demand
upon Bradley for the payment of the Perkins note, and pro-
cured from Mead an assignment of his cause of action
against Bradley, and of all his rights arising out of the neg-
lect and refusal of Bradley to pay the note.

Mead for some time before the present suit was com-
menced had been, and is still, insolvent and unable to pay
the Perkins note.

Upon these facts the defendant claimed that the plaintiffs
could not recover upon any count in their declaration; that
the transaction between Mead and himself was a mere mort-
gage, and that the assumption clause in the deed was not

binding upon him, either in favor of Mead or of the plain-
tiffs; and that he was not precluded by any of the above
facts from claiming that the transaction was a mortgage and
the assumption clause in the deed not binding upon him.
The court overruled this claim.

The plaintiffs offered in chief the mortgage deed from
Mead to Anson Perkins, the Perkins note with its endorse-
ments, the deed from Mead to Bradley, and the assign-
ment from Mead to the plaintiffs. It was admitted by
the defendant that the Perkins note now belonged to
the plaintiffs, and that no payment had been made thereon.
The plaintiffs also offered evidence of their demand on Brad-
ley for the payment of the Perkins note before suit. The
plaintiffs also offered to show the conversation hereinbefore
recited as having taken place between Bassett and Bradley,
but the defendant objected and the court excluded the evi-
dence. The plaintiffs then rested their case.

The defendant then offered in chief the mortgage from
Mead to the bank ; the mortgage from Mead to Perkins ;
the deed from Mead to Bradley ; the writing from Bradley
to Mead ; the lease from Bradley to Mead ; the bill of sale
from Mead to Bradley ; and the quit-claim deed from Brad-
ley to Mead. To the admission of the writing given by
Bradley to Mead, of the lease, of the bill of sale, and of the
quit-claim deed, the plaintiffs objected. The defendant
claimed that these instruments showed that the transaction
between Mead and Bradley on October 10th, 1876, was a
mere mortgage, and that the interest of Bradley in the land
and his liability on account of it had terminated on the 29th
of October, 1878. The court admitted the instruments
under the above claim subject to the exception of the plain-
tiffs. The defendant then rested his case.

The plaintiffs, in reply to the evidence thus introduced by
the defendant, and for the purpose of showing that the tran-
saction between Mead and Bradley was not a mere mort-
gage, at least as against the plaintiffs, offered evidence, by
Mead as a witness, as to the parol agreement between Mead
and Bradley hereinbefore stated, and as to the circumstances

under which and the objects for which the written instruments of October 10th, 1876, were executed and delivered. The plaintiffs' counsel requested the witness to state " the circumstances under which the deed of Mead to Bradley was given." To this question the defendant objected, but the court admitted it, the defendant excepting. In reply to this question the witness narrated the circumstances and transactions between himself and Bradley, as before stated, without further objection by the defendant, and the defendant at a later stage of the proceedings gave his version of the same transaction.

The plaintiffs' also claimed that whatever might be the real character of the transaction between Mead and Bradley on the 10th of October, 1876, Bradley was estopped from claiming that anything therein relieved him from liability to the plaintiffs, and in support of this claim offered evidence to show, as before stated, that when the plaintiffs took the Perkins note they paid full value for it, that they took it relying mainly upon the liability of Bradley to pay it, and before they agreed to take it sought for and obtained from Bradley the information before stated. To all this evidence the defendant objected, but the court admitted the same, the defendant excepting.

Upon these facts the court rendered judgment for the plaintiffs for the sum of $3,213. The defendant moved for a new trial for error in the rulings of the court.

*J. S. Beach* and *J. K. Beach*, in support of the motion.

1. The transaction between Mead and Bradley on the 10th of October, 1876, as evidenced by the written instruments by them respectively executed and delivered each to the other on that day, resulted in a mortgage from Mead to Bradley of the real estate described in the deed, to secure Bradley against loss by reason of his accommodation endorsements of the two promissory notes described in the defeasance. The deed and the defeasance being executed and delivered at the same time and as a part of the

same transaction, the contract evidenced thereby is a unit, and is to be measured by the same rules as if they had both been transcribed on a single sheet of paper, and had thus become in form as well as in fact one instrument. Under this rule the writing executed by Bradley to Mead is clearly a defeasance. 4 Cruise's Dig., 113; 1 Jones on Mortg., § 244; *Dow* v. *Chamberlain*, 5 McLean, 281; *Judd* v. *Flint*, 4 Gray, 557; *Bailey* v. *Bailey*, 5 id., 505; *Murphy* v. *Calley*, 1 Allen, 107; *Lane* v. *Shears*, 1 Wend., 433; *Brown* v. *Dean*, 3 id., 208; *Clark* v. *Henry*, 2 Cowan, 324; *Peterson* v. *Clark*, 15 Johns., 205; *Manufacturers' Bank* v. *Bank of Pennsylvania*, 7 Watts & Serg., 335; *Friedly* v. *Hamilton*, 17 Serg. & R., 70; *Guthrie* v. *Kahle*, 46 Penn. St., 331. The plaintiffs however seek to narrow the limits of this contract by pointing out that it contains a certain phrase which they say so far affects the rights and obligations of the parties as to extinguish their relative rights and obligations as mortgagor and mortgagee, and put in their stead those of an absolute grantor and grantee. They say that the obligation of Bradley to reconvey was dependent upon the optional right of Mead to make or not to make a written request for such conveyance. The language of the defeasance is as follows:—
"If said Mead shall well and faithfully perform the conditions hereinafter mentioned, I hereby agree at any time on or before the expiration of three years from the date of this instrument *upon the written request of said Mead* to reconvey, &c." It is obvious that this italicised clause was inserted, not to confer on Mead the power of treating the transaction as an absolute deed or as a mortgage at his option, but, in connection with and following right after the three years extension of his rights as mortgagee in possession, its object was to enable him to terminate his obligations at any time *during that period* upon payment of his two notes, and notice to the mortgagee that he wanted a reconveyance. The corollary of the plaintiffs' proposition would be, that if Mead failed to exercise this option within the three years, the mortgage would at the expiration of that period cease to exist, and the title would become absolute in Bradley. But

" once a mortgage always a mortgage." The two instruments are to be construed as one deed, so that the rule contended for by the plaintiffs would apply to and disturb every mortgage in which the mortgagee, giving his deed to secure a time obligation, stipulates for the right to shorten the period of its existence if he shall so elect.

2. The assumption by the junior mortgagee of a prior mortgage, and his agreement to pay it, contained in the deed he accepts, does not impose upon him any personal liability for the payment of the prior mortgage debt, which can be enforced against him either by the mortgagor or by the prior mortgagee. The legal conclusions announced in *Foster* v. *Atwater*, 42 Conn., 244, and kindred cases, are sound law. But the logic of that law does not simply fail to sustain, but is fatal to the theory that a junior mortgagee becomes by this assumption clause personally responsible for the prior mortgage debt. Judge PARK, in giving the opinion in that case, (page 250,) says :—" The principle is well settled that where one by deed poll grants land and conveys any right, title or interest in real estate to another, and when *there is any money to be paid by the grantor to the grantee*, or any other debt or duty to be performed *by the grantee to the grantor* or for his use or benefit, and the grantee accepts the deed and enters on the estate, the grantee becomes bound to make such payment or perform such duty, and not having sealed the instrument *is not bound by it as a deed, but it being a duty, the law implies a promise to perform it*, upon which promise, in case of failure, assumpsit will lie."   \*   \*

" It makes no difference to the defendant whether he should pay the price to his grantor or to the holders of the notes, so far as the amount was concerned. But if he should pay his grantor, he would have no security that the grantor would pay the incumbrances on the property. If he should pay the holders of the notes he would be secure in that respect. It was for the defendant's interest therefore, so long as *he must pay the money consideration for the land* to one party or the other, to pay it to the holders of the notes." Let us apply these principles to this case. If Mead and

Bradley, on the 10th day of October, 1876, had met as vendor and vendee, and the interview had resulted in a purchase of this property by Bradley under a contract by which he agreed to pay as purchase money the sum of $5,400, then under such a transaction there could be no objection to his paying that purchase money by an assumption of these two mortgages of that amount, and his duty to make such payment being evidenced by his acceptance of the deed "the law implies a promise to perform it, upon which promise in case of failure assumpsit will lie." But Bradley and Mead did not meet on that day as vendee and vendor, they met as creditor and debtor, and the interview resulted in a transfer of title to the creditor to secure him against loss for accommodation indorsements he had made for his debtor. In such a transaction the assumption clause is "a mere declaration that the property was conveyed to the mortgagee, subject to the lien of the prior mortgages," for unless and until the transaction resulted in a debt from Bradley to Mead, the mode of paying that debt, whether by cash, or by the assumption of mortgages, or otherwise, could not be the subject of negotiation. "Where the grantee takes only a mortgage he owes no money for the land which he can promise to pay to the prior mortgagee, for he does not acquire a title to the land. To become a debtor to any one he must owe a debt. When he buys land absolutely for a stipulated price, and instead of paying the whole of it to his grantor he is allowed to retain a part which he agrees to pay to a creditor of the grantor having a lien upon the land, this amount which he thus agrees to pay is his own debt." *Garnsey* v. *Rogers*, 47 N. York, 239. "If the deed was indeed a mortgage merely, the complainant has no claim to a personal decree for deficiency against Mayer. He is not in that case liable to Mrs. Lichenstein on the assumpsit contained in the deed; obviously under such circumstances he would not be bound to indemnify her against the complainant's mortgage. The equity on which the relief of the mortgagee depends in case of assumpsit by the grantee of the mortgaged premises, is the right of the grantor against his vendee to which the

mortgagee is permitted to succeed by substituting himself in the place of the mortgagor." *Arnaud* v. *Griggs*, 29 N. Jer. Eq. R., 482. " When such an agreement to assume the payment of a mortgage is contained in a mortgage, it does not as a general rule impose any personal liability upon the mortgagee for the payment of the prior mortgage debt which can be enforced against him by the prior mortgagee. The subsequent mortgagee owes no money for the land which he can promise to pay to the prior mortgagee, for he does not acquire any title to the land." 1 Jones on Mortg., § 756. " The fact that the assumption of the prior mortgage is made on a conveyance of the land absolute in form, but intended as a mortgage does not change the rule." Id., § 757.

3. It being established that no valid obligation to pay these mortgage debts rested upon the defendant as evidenced by the written documents of October 10, 1876, no such obligation is to be found in the parol testimony set forth in the record. The avowed object of this parol testimony as disclosed by the record was "for the purpose of showing that the transaction between Mead and Bradley was not a mere mortgage." " In the case before us, the parol evidence adduced by the plaintiffs to prove an absolute deed to be a deed on condition was entirely inadmissible. No case determined in a court of law proving its admissibility has been cited: nor am I aware that any such case exists. * * It has been so frequently adjudged by the courts on each side of the Atlantic as to have the resistless force of a maxim, that parol evidence cannot be received in a court of law to contradict, vary, or materially affect by way of explanation, a written contract. HOSMER, C. J., in *Reading* v. *Weston*, 8 Conn., 120. " But that parol evidence in a court of law is incompetent to convert an absolute deed into one that is conditional is too well established to be made a question." *Benton* v. *Jones*, 8 Conn., 189. *A fortiori* parol evidence is incompetent to convert a mortgage into an absolute deed. Courts of equity admit parol evidence to convert an absolute deed into a mortgage, because " it is the fraudulent use

of the deed which equity interposes to detect and prevent," but no case can be found in any court, either of law or equity, where parol evidence was admitted to convert a mortgage into an absolute deed, because the very reason of the rule of admission in the one case would exclude it in the other.

4. But if the parol testimony is admitted, it fails to prove either count of the plaintiffs' declaration. The declaration sets out as its basis, an indebtedness, not of the defendant to the plaintiffs, or to Mead, or to any one, but an indebtedness of Mead to Anson Perkins " in the sum of $3,000 as evidenced by the promissory note of said Mead for said sum, dated March 18th, 1874, payable to said Perkins or order, one year after date." It alleges that this note was secured by mortgage of that date on certain described real estate; that Mead, on the 10th of October, 1876, by deed poll of that date, conveyed a portion of the mortgaged premises to the defendant ; " that it was part of the consideration of the conveyance from Mead to the defendant, and part of the price which the defendant agreed to pay for the premises, that the defendant should pay the mortgage indebtedness to the New Haven Savings Bank and to Perkins, or the several holders of the same, instead of paying the same amount to Mead ; that the defendant by accepting the deed, did, on the 10th of October, faithfully promise and agree with Mead that he would assume and pay said mortgage indebtedness." But the parol testimony proves another contract based upon a different consideration. The promise alleged is an implied promise to pay $3,000 growing out of the defendant's acceptance of the deed poll. The promise claimed to be proved by the parol testimony is an express promise to pay the $3,000. The consideration of the promise alleged in the declaration is that the sum promised to be paid was part of the price the defendant had agreed to pay for the land. The consideration claimed to be proved by the parol testimony is the procurement by Mead of a release by Northrop of an incumbrance, as to which incumbrance, or any release thereof, no intimation is given in the declaration. The dec-

laration describes the defendant as a purchaser from Mead, and describes the consideration of an implied promise to be an agreement to pay the plaintiffs $3,000 as part of the purchase money. The parol testimony represents him as a creditor of Mead seeking security for a future contingent liability, and sets forth as the consideration of an express promise, the obtaining of· such security to the amount of less than $2,000, by an assumption of absolute liability to an amount of over $5,000. The variance between the facts so claimed to be proved by the parol testimony, and the facts as alleged in the plaintiffs' declaration, is fatal to a recovery on either count. *Willoughby* v. *Raymond,* 4 Conn., 130 ; *Shepard* v. *Palmer,* 6 id., 95 ; *Russell* v. *South Britain Society,* 9 id., 508 ; *Kellogg* v. *Denslow,* 14 id., 425 ; *Chittenden* v. *Stevenson,* 26 id., 442 ; *Camp* v. *Hartford & N. York Steamboat Co.,* 43 id., 333 ; *Shepard* v. *N. Haven & Northampton Co.,* 45 id., 54.

5. The promise claimed to be proved by the parol testimony that Bradley would answer for the debt of Mead to Perkins, and for his default of payment thereof to the plaintiffs, was not legally proved by it, either in the form of an express parol promise, or under the guise of an attempted estoppel. *Danforth* v. *Adams,* 29 Conn., 107 ; *Clapp* v. *Lawton,* 31 id., 95 ; *Packer* v.· *Benton,* 35 id., 343 ; *Pratt's Appeal from Probate,* 41 id., 196 ; *Kinney* v. *Whiton,* 44 id., 262 ; *Pierce* v. *Andrews,* 6 Cush., 4 ; *Insurance Co.* v. *Mowry,* 96 U. States, 544 ; *Brightman* v. *Hicks,* 108 Mass., 246 ; *Brown* v. *McCune,* 5 Sandf., 224 ; *Dewees* v. *Manhattan Ins. Co.,* 35 N. Jer., 375.

*W. C. Robinson* and *J. W. Alling,* contra.

CARPENTER, J. The defendant having a claim of nearly two thousand dollars against one Mead, took a deed, absolute in form but intended as a mortgage, of certain real estate, which was a part of a larger tract of land, all of which was subject to three prior mortgages. The contract between the parties was, that Mead should procure the third mortgagee to release to him the portion mortgaged to the

defendant so that it should be subject only to two mortgages, the defendant agreeing to pay those mortgages, so that the third mortgage should be the first on the remaining portion of the land. The owner of the third mortgage did release his interest to Mead as agreed, and Mead thereupon conveyed the land, subject only to the two mortgages to the defendant by a warranty deed in which a clause was inserted, that the defendant assumed and agreed to pay the amount of the first two mortgages.

The building on the premises was used as a plow-manufactory. The contract further provided that the personal property therein contained, consisting of stock, tools, manufactured goods, etc., should also be conveyed to the defendant.

A defeasance executed on the same day provided that the defendant, his own debt being first paid, would at any time within three years, at Mead's request, reconvey the land, tools, etc., to Mead. The defendant leased the mortgaged premises to Mead, who continued in possession carrying on business as before. The deed and the lease were recorded; the defeasance was not recorded.

The defendants' claim, excepting about four hundred dollars, was paid, when the buildings were destroyed by fire. Soon after the note described in the declaration was presented to the defendant and payment demanded, which was refused. Thereupon this suit was brought. A few days afterwards the defendant, without any request from Mead, executed and tendered a re-conveyance of the premises to him, but he declined to accept it. The defendant then caused the deed to be recorded.

The buildings were uninsured, and the land is now worth no more than the first mortgage.

The Superior Court having rendered judgment for the plaintiffs, the defendant filed a motion for a new trial.

The question presented by the motion is, whether the defendant's promise to Mead to pay the amount of the prior mortgages can be enforced.

The authorities substantially agree that when one pur-

chases real estate incumbered by a mortgage, and agrees to pay the mortgage debt as a part of the consideration of the deed, the promise may be enforced by the mortgagee. In such cases the purchaser merely agrees to pay his own debt to a third person, the mortgagee, and he, by an equitable subrogation, stands in the place of the promisee. It would seem that such an action might also be sustained upon the familiar principle which governs assumpsit for money had and received.

The mortgagee may also sustain an action whenever the circumstances are such as to justify the conclusion that the promise was made for his benefit.

Where however the conveyance in which the grantee assumes a prior mortgage is itself a mortgage, the case is somewhat different, and the obligation may be materially modified or abrogated altogether by subsequent events. In such a case, the grantee owes the grantor no debt which he can promise to pay to a prior mortgagee, and if he makes such a promise it is ordinarily a mere agreement to advance money to pay the prior mortgage, or rather an agreement with the mortgagor to purchase it. In such cases there is little room for the conclusion that the promise was made for the benefit of the prior mortgagee. It is simply a transaction between the immediate parties. To what extent such a contract may be enforced must depend upon the circumstances of the case.

The question whether the promisee, Mead, his mortgage to the defendant being still outstanding, can enforce the promise, is another form of stating the question involved in this case. After the last mortgage is satisfied and discharged, it seems quite clear, both upon principle and authority, that, in an ordinary case the promise is canceled, and cannot be enforced by any one. Presumptively that is the intention of the parties, unless there is something in the case showing a contrary intention. In the present case Northrop, the third mortgagee, had, upon a valuable consideration, acquired certain rights which, it would seem, could not be affected by a discharge of the mortgage by the mortgagor, but as those

rights are not involved in the case, we need not consider them. This subject is fully and ably discussed in *Garnsey* v. *Rogers*, 47 N. York, 233. That case is a leading case and is cited with approbation in Jones on Mortgages, and was followed in *Arnauld* v. *Griggs*, 29 N. Jersey Eq. R., 482.

These authorities show that such a promise contained in a mere mortgage imposes upon the promisor no absolute continuing obligation which can be enforced by the prior mortgagee. They do not however touch the question whether he may not acquire and enforce the rights of the mortgagor in the promise.

Assuming the law to be as stated in the cases cited, how does it affect the present case? From what has already been said it is obvious that the obligation would not continue after the mortgage containing the promise had been satisfied and the property re-conveyed to the mortgagor. That had been done in the case of *Garnsey* v. *Rogers*, supra, although the decision does not rest on that ground.

In the present case, at least so far as this question is concerned, we must regard the mortgage to the defendant as still outstanding. Four hundred dollars of the debt remained unpaid. Mead had not called for a re-conveyance under the defeasance, and indeed had no right to call for it. It can hardly be regarded as the privilege of the defendant to discharge the mortgage at his pleasure, and thereby relieve himself of his obligation against the wishes of Mead. Mead had an interest in having the prior mortgages paid; he had for a valuable consideration contracted with the defendant to pay them, and had placed in his hands sufficient property to indemnify him therefor. That property, without his fault we must presume, had been reduced in value so that it was insufficient for that purpose. The defendant having failed to protect himself by insurance was not in a condition to insist that the loss should fall upon Mead. Mead therefore might well refuse to accept the re-conveyance; and having done so, the relation of mortgagor and mortgagee between himself and the defendant still exists and the defendant's promise still remains in force.

Again : If the defendant may in this way, of his own will, escape liability, it will operate as a fraud upon Northrop, the third mortgagee.  He had released the property mortgaged to the defendant from his own mortgage, and probably upon the strength of the defendant's promise to pay the prior mortgages.  The defendant thereby obtained better security for his own debt, and, had the contract been carried out, Northrop would have had the security of a first mortgage on the remaining property.  If now the two prior mortgages are to be collected from the property they will more than absorb the whole, and Northrop loses his whole claim.  Thus the loss occasioned by the fire falls in fact on him, while he had no interest in the property and had no power to protect himself by insurance.

Moreover, one of the plaintiffs, before purchasing the Perkins note, had an interview with the defendant respecting his liability to pay the same.  The defendant, with full knowledge that the plaintiffs were negotiating for it, told him that he had bought the property and "had assumed and agreed to pay the Perkins note, as his deed would show," and that "it showed what he considered the property worth when he had paid on it or it had cost him some $1,800 more than the mortgages."  This conversation was reported to the other plaintiffs ; and relying mainly on Bradley's liability to pay the Perkins note they purchased it.  Now, upon the theory of the defense that there was no subsisting valid promise to pay the note, his declaration is a misrepresentation, which having been acted upon amounts to an equitable estoppel.  If it was true, as he stated, that he had agreed to pay the note, then there was a valid promise at that time which Mead could enforce, and that obligation not having been discharged, he is still liable.

And this brings us to a more important distinction between this case and the case of *Garnsey* v. *Rogers*.  In that case the prior mortgagee, having foreclosed and sold the property, and the avails being insufficient to pay his demand, sought to make the subsequent mortgagee liable for the deficiency on his promise to assume, and that after the mortgagor, to

whom the promise was made, had discharged the same by satisfying the mortgage debt and taking a release of the property. In this case Mead has not discharged the promise. On the contrary, the mortgage to the defendant remains unpaid; the release deed which the defendant executed and tendered to him he refused to accept, on the ground that other parties were interested in the defendant's promise; and after the note in suit had been presented to Bradley and payment demanded and refused, he assigned his claim against Bradley under the promise to the plaintiffs. And that is the claim which the plaintiffs are prosecuting and the ground on which they ask for a judgment on the first and third counts in the declaration. We think they are entitled to it. *Foster* v. *Atwater*, 42 Conn., 244. There is nothing illegal in the contract and nothing in it contrary to public policy. The promise was made upon a sufficient consideration, and, but for the accident of the fire, would have been beneficial to the defendant as well as to the others. It may be hard for him to bear the loss, but it is not inequitable, while to transfer the loss from the defendant to the plaintiffs would be both hard and inequitable.

We conclude, then, that the plaintiffs, standing in the place and having the rights of Mead, are entitled to maintain this action, and that a new trial must be denied.

In this opinion the other judges concurred.